## UNSUCCESSFUL PROSECUTION OF A VENDOR OF HENRY FORD'S "DEARBORN INDEPENDENT."

Municipal Court of the City of Cleveland.

City of Cleveland v. Milton A. Coulson.

Decided April, 1921.

*Scandalous Publication—Allegations Concerning Must State What Therein Contained Is Indecent or Likely to Create a Breach of the Peace*

An Affidavit charging that one C "did then and there offer for sale on East Ninth and Euclid avenue, within the limits of said city (Cleveland), a certain indecent and scandalous publication, to-wit, the 'Dearborn Independent,' the same being calculated to excite scandal and having a tendency to create a breach of the

peace," does not state a crime under Ordinance 1770 of said city, where said publication is found upon inspection to contain numerous articles of a creditable character and there is nothing in the affidavit to indicate what article or articles it is intended to charge are calculated to excite scandal or create a breach of the peace.

*Oscar C. Bell*, Police Prosecutor, *M. P. Mooney,* and *John D. Marshall*, Assistant Director of Law, for the State.

*Squire, Sanders & Dempsey*, by *Harry Crawford* and *Ernest Dempsey.*

The accused was brought to trial upon the following affidavit:

"Before me, E. L. Hilliard, Deputy Clerk of the Municipal Court of Cleveland, personally came A. H. Wilks, who being duly sworn according to law, deposes and says, that on or about the 14th day of March, A. D. 1921, at the said city and county, one Milton A. Coulson did then and there unlawfully offer for sale on E. Ninth and Euclid Avenue, within the limits of said city, a certain indecent and scandalous publication to-wit, 'The Dearborn Independent,' the same being calculated to excite scandal and having a tendency to create a breach of the peace. A copy of said publication is here attached. And further deponent says not; contrary to the form of an Ordinance of said City in such cases made and provided.

A. H. WILKE.

Sworn to and subscribed before me, this 14th day if March, A. D. 1921.

W. B. Woods, Prosecuting Attorney, the Municipal Court of Cleveland, O. V. N.

E. L. Hilliard, Deputy Clerk of the Municipal Court of Cleveland."

The jury was impaneled and sworn and A. H. Dilks had taken the stand on behalf of the plaintiff. The defendant objected to the introduction of any testimony under the foregoing affidavit on the ground that the affidavit was insufficient and that the ordinance was unconstitutional.

Terrell, J.

I have in mind the case of a man who was charged with perjury in a trial of a certain case, a record of which will be found in the

files of the court, wherein it is alleged in an affidavit that he gave false testimony, that he might be within his rights to ask wherein was the testimony false and what testimony did he give and wherein was it false.

The answer could be made that it is all in the record, that a record of it will be found, the court stenographer has a copy of all the testimony given, and other witneses to show that he falsified in court.

Yet that is only evidence to be introduced. I have some doubts whether this affidavit is sufficient. It appears even counsel for plaintiff has some doubts as to its sufficiency, after due thought. If this affidavit is not sufficient, defendant is not placed in jeopardy, and a new action may be instituted.

Now then looking at this publication. The fact that a publication is issued called "Dearborn Independent," or "Dearborn Independent," or any other "Independent" does not of itself make it objectionable. There seems to be some articles in it, entitled "Navy Operates first Exclusive Hospital Ship." There is nothing in that title that seems objectionable. "Cutting up old Circus Money." There is nothing in that that seems objectionable. "The Gold Star Ship," "Belgium's Indebtedness," "The Peoples' Savings," "Our General and Sister" doing this or that. "Picture of Some Play Grounds; Children Romping at Play, "Jewish Rights Clash with American Rights." Apparently, from comment made heretofore in this case, it seems that the objectional feature would lie under a title of that kind. "A Strange Job," Breach of History," "Should a Foreign Woman Be Pitied?" I think it is a little without reason to ask a court to wade through a book like this, to determine if each or any part or any article or item in this paper is such that might be calculated to excite scandal or have a tendency to create a breach of the peace.

Surely those who were charged with punishment of violations of the law and the prosecution of violations, ought to know immediately that part of the publication that is objectionable, and if this is a part of the affidavit if this publication is made part of the affidavit, the motion would lie, I think to strike out all

of it—all at least that by no stretch of the imagination could be considered objectionable, to be within the phrase "calculated to excit scandal or having a tendency to create a breach of the peace."

So the issue ought to be in good pleading, narrowed down to the real issue that the court will be required to rule upon when objections are made to the introduction of evidence, so the court may be guided in determining what evidence is proper, that the defendants may be apprised now of that which some one else determines by the filing of this affidavit is a violation of this law.

Now I offer these observations which I call "thinking out loud" for the benefit of the parties here; if you have any further comment to make I will hear it. If not I will take the matter under advisement until tomorrow morning; and ask you also to take it under advisement. If the city's case is not built upon foundation to stand, it is folly to proceed with the structure. Have counsel any further comment to make upon this?

Thereupon adjournment was by the court taken to the hour of 9:00 o'clock the following day, being Tuesday, May 10, 1921, at which time all parties appeared as before and the court proceeded:

I have carefully gone over the matter submitted last evening. The question as to the sufficiency of this affidavit is presented upon the motion to exclude testimony, or objection to the testimony.

I have come to the conclusion that this affidavit is defective, and does not state with sufficient definiteness the crime under the ordinance. That although the copy of the Dearborn Independent is apparently attached to the affidavit, it is not made a part of it. Even in pleadings in a civil case it could not be read in connection with the petition, where the sufficiency of the averments in the petition to state a cause of action was questioned

I do not see how in a criminal case the exhibit of evidence itself can be considered where the sufficiency of the charge in the affidavit is attacked.

Further, in consideration of the publication itself, there is no

definite averment in the affidavit of any matters or facts alleged
to have been published in their exhibit which would apprise the
defendant of that which he is charged with having put in circu-
lation, having a tendency to incite a breach of the peace.    A re-
view of this paper shows many articles, some of which might be
extremely objectionable to a considerable number of people,
among which I see one here that I might comment upon.

It appears apparently on the editorial sheet of this paper,
titled "Duly Executed by the Military." It sets forth how sev-
eral young men were executed by the Crown Forces in Ireland.
These boys were slaughtered, in cold blood, for levying war
against the Crown Forces; were accused not of warring against
their own country, not against the government of their own coun-
try chosen by a majority of about ninety per cent. of the fathers
of Ireland; but against what they regarded as a foreign invader,
and ruthlessly and without reason putting their native men to a
firing squad.

Even the high judicial authorities of this foreign invader have
declared that a state of war exists between Ireland and England:
legally and actually this is undoubtedly the case.    Why then
were not these captured boys accorded at least the simple status
of prisoners of War?

It proceeds further to condemn the government—the British
government in slaughtering and putting to death these young
men.    We may take the stand that millions of Americans of
Irish blood and breeding must be Americans and not Irish, nor
seek to embroil their adopted country in the troubles of their
former home land, and even if there were not a single American
of Irish blood in the United States, we could not shut our eyes
to such doings in Ireland.

Americans who are not Sinn Feiners or narrow Nationalists
in any respect will with difficulty repress a deep sense of disgust
and revolt against wanton slaughter that must outrage the ele-
mentary feelings of humanity the world over.

Now there is an article that people, or the British government
themselves, those who are Englishmen, in fact or by descent,
might object to, and might claim that it is indecent, scandalous,

and might claim that it would tend to incite breach of the peace in our own city here between people who are of Irish or English descent.

Yet I can not conceive, although my feelings would be on one side of that question, that that is an indecent article that would tend to incite breach of the peace in this county.

Now I cite this as showing that a considerable number of people might consider it indecent and objectionable on that ground. There is another article in here entitled "Jewish Rights Clash with American Rights." In this article there is set forth in chronological order apparently dating from 1900 and 1899 apparently a history of the efforts of a people—a people who have been oppressed in many countries—to safeguard and secure the rights that we guaranteed to them under the constitution of our country, a constitution that recognizes no race, color or religion.

This sets forth apparently a history of the effort of the Jewish people in this country to safeguard the rights which our constitution guarantees to them.

True, it might be written by a man who is somewhat prejudiced and in some respects may be objectionable to the Jewish people.

Now these two items deal with peoples at large. Which of these two items, even if this publication were connected up, is it claimed by the prosecution here is the one that is objectionable and calculated to incite breach of the peace?

Palpably, counsel for plaintiff in this case would not contend that the editorial article, although objectionable to many people, is the one to which this prosecution is addressed. From the argument and comment made I take it of course that the article pertaining to Jewish rights is the one that the prosecution objects to. But there is not a word in the affidavit itself that apprises the defendant of that which is claimed to be scandalous and circulated to excite scandal and having a tendency to create a breach of the peace.

I do not think this affidavit is sufficient to state a crime under the ordinance. I will sustain the motion, or the objection of the defendant to the evidence."